CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 11 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BETTY J. LEITCH, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00278 |
| ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| UNITED STATES OF AMERICA, ) | United States District Judge |
| ) | |
| Defendant. ) | |

The plaintiff, Betty J. Leitch, was injured in an automobile accident on Route 220 in Botetourt County on June 7, 2004. The accident occurred when a United States Postal Service employee failed to stop his vehicle in the cross-over at the intersection of Route 681 and Route 220, and drove into the side of the vehicle which Leitch was driving. Leitch filed the present action against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, claiming damages caused by the negligence of the Postal Service employee.

The government previously conceded that the accident resulted from the negligence of the Postal Service employee, leaving for trial only the issue of damages. A bench trial on this issue was held on August 27, 2007, and the matter is now ripe for decision.

### Summary of the Evidence

I. The Accident

On the date of the accident, Leitch was driving her mother-in-law, Nancy C. Creech, in the plaintiff's pick-up truck from Covington to Roanoke for a follow-up appointment with an eye specialist. At approximately noon, while Leitch and Creech were traveling in the right lane of Route 220 South, they approached a cross-over at the intersection of Route 220 and Route 681.

Leitch and Creech saw the Postal Service employee's vehicle cross Route 220 North and pull into the cross-over. Although it appeared as if the Postal Service employee was going to stop in the cross-over, he drove through the cross-over and collided with the pick-up truck.

The Postal Service employee's vehicle was traveling at an approximate speed of twenty-five to thirty miles per hour upon impact with the pick-up truck on the driver's side where Leitch was sitting. The collision caused the pickup truck to flip three times. Each time, the truck landed on the passenger side, finally coming to rest in an upright position.

When the accident occurred, Leitch was wearing her seatbelt. Nonetheless, the impact of the collision caused her to strike her head against the windshield and her body to be violently jarred in the vehicle. In addition, the driver's side door struck her left elbow causing a large gash.

Leitch and Creech were trapped in the truck for thirty to forty-five minutes after the accident, because the doors to the truck could not be opened. The fire department ultimately used the "jaws of life" to get them out of the vehicle.

## II. Leitch's Post-Accident Medical Treatment

Following the accident, Leitch had lacerations on her left elbow and another on her head. She also complained of pain in her head, neck, back and left arm. Leitch was transported in an ambulance to Roanoke Memorial Hospital. While at the hospital, Leitch underwent x-rays and received several stitches along her hairline and on her elbow. She was discharged later that same evening.

On June 10, 2007, Leitch began seeing her family physician, Dr. Patricia Henderson, for problems associated with the accident. On that date, Leitch complained of pain in her left arm

and elbow, dizziness, blurred vision, vomiting and neck pain. She also noted the presence of a knot on her left arm. Dr. Henderson referred Leitch to Dr. Joe Pack, an orthopaedic surgeon, to evaluate the injury to her elbow and ordered a CT scan to check for the presence of a head injury. The head CT scan performed later that day did not identify any injury to her head other than the laceration in her scalp.

Leitch saw Dr. Pack on June 11, 2004. Dr. Pack noted the laceration to her elbow as well as some swelling and pain associated with movement of the elbow. He recommended that Leitch perform home exercises until her stitches were removed. On June 15, 2004, Leitch returned to Dr. Henderson who removed the stitches from her left elbow. Dr. Pack re-examined Leitch on June 25, 2004 and referred her to physical therapy for her left elbow.

Leitch had an initial physical therapy session on June 28, 2004. At that time, she also complained to the physical therapist of neck pain and received therapy to treat both her elbow and her neck. During the period from July 1, 2004 to September 4, 2004, Leitch returned for physical therapy for a total of twelve sessions.

Upon Dr. Henderson's recommendation, a cervical x-ray was taken on July 6, 2004. The x-ray revealed a disc space narrowing at C5-6. Leitch also visited Dr. James McCoig, an orthopaedic surgeon, on July 4, 2004. Dr. McCoig ordered an x-ray of the elbow which revealed no definite fracture. Dr. McCoig ordered observation of her condition for an additional six to eight weeks.

On September 13, 2004, Leitch saw Dr. Henderson again, complaining of pain in her neck, arm and shoulders. Dr. Henderson referred her to Dr. David Essig-Beatty, an osteopath at the Robert C. Byrd Clinic, and back to physical therapy. Leitch had her initial visit to Dr. Essig-

3

Beatty on September 20, 2004 and reported neck pain which had not been alleviated with physical therapy. Dr. Essig-Beatty performed osteopathic manipulation therapy ("OMT") to Leitch's neck and upper back areas. He also ordered an additional cervical x-ray which indicated disc space narrowing at C5-6, consistent with her prior x-ray. Leitch saw Dr. Essig-Beatty on October 11, 2004 and October 28, 2004. On the latter occasion, Dr. Essig-Beatty ordered a cervical MRI.

On November 4, 2004, a cervical MRI was performed. After reviewing the MRI, Dr. Essig-Beatty noted multiple levels of disc abnormality with some stenosis at C3 and T1. He prescribed Ultram. At her December 2, 2004 visit to Dr. Henderson, Leitch again reported neck and arm pain. Leitch returned to Dr. Essig-Beatty on December 6 and 29, 2004 for additional OMT treatments.

In the meantime, Dr. Henderson noted that Leitch was having some problems related to her ear and nose at an office visit on October 14, 2004 and prescribed Zyrtec and Nasocort. Leitch also returned to Dr. Pack's office on November 8, 2004 related to her complaints of elbow pain. Dr. Pack gave her a steroid injection and recommended certain home exercises as well as the use of a tennis elbow strap.

Upon the referral of Dr. Essig-Beatty, Leitch was examined by Dr. Joe Othman, a neurologist, in early 2005 for her complaints of neck and back pain. Dr. Othman gave Leitch injections and put her neck in traction.

Leitch's sinus symptoms continued to worsen and Dr. Henderson referred her to Dr. Daniel Hwang, an ENT specialist. On March 17, 2005, Dr. Hwang examined Leitch and determined that she had a deviated septum. Dr. Hwang performed a septoplasty on April 18,

4

2005 to repair this condition, and Leitch's symptoms improved markedly.

In March of 2005, Leitch returned to Dr. Pack complaining of severe pain in her neck and elbow. Dr. Pack injected the elbow again at that time and at a subsequent visit on August 25, 2005. At visits to Dr. Henderson in July, August, October and November, Leitch again complained of pain in her neck and elbow. Dr. Pack referred Leitch for an MRI of her elbow which was performed on February 24, 2006 and which indicated a partial tear of the extensor carpi radialis brevus tendon. On March 3, 2006, Dr. Pack performed surgery on Leitch's elbow during which he identified an tear in the extensor carpi radialis brevus tendon, debrided the tendon and surgically reattached it to the bone.

Leitch was evaluated by Dr. Pack on March 6, 13, and 29, 2006 and underwent physical therapy on several occasions in April 2006. On May 24, 2006, Dr. Pack released Leitch to her regular activities after she reported significant improvement in her elbow. On June 2, 2006, however, Leitch reported to Dr. Pack that she had lifted a gallon of milk and immediately felt a pull in her elbow followed by a recurrence of pain. Dr. Pack referred her to physical therapy which took place during July 2006.

Dr. Pack then referred Leitch to Dr. Brian Torre, an orthopaedic surgeon, for a second opinion. Dr. Torre declined to perform a revision surgery, however he referred Leitch to Dr. William Hooper, another orthopaedic surgeon with a speciality in hand and upper extremity surgery. After an initial evaluation on December 11, 2006, Dr. Hooper performed surgery on Leitch's elbow on January 12, 2007. During this second surgery, Dr. Hooper removed dirt from inside the elbow and reattached the tendon following a lengthening procedure. After her surgery, Leitch returned to physical therapy on several occasions and to Dr. Hooper for evaluation on

March 1, 2007 and May 9, 2007 at which time she noted improvement in her symptoms.

Leitch saw Dr. Henderson in February 2007 with regard to her neck pain. Dr. Henderson once again referred Leitch to Dr. Essig-Beatty for OMT treatments. Leitch received those treatments on March 12, 2007, March 26, 2007, April 26, 2007 and July 9, 2007. On July 25, 2007, Leitch again saw Dr. Henderson who noted that she experienced some pain relief from the OMT treatments.

Highlands Therapy performed a Functional Capacity Evaluation of Leitch on May 15, 2007. In its report, the evaluator noted left upper extremity weakness, particularly with repetitive tasks, prolonged positioning activities, and elevated work positions. The evaluator opined that this condition would limit Leitch's functional capacity.

### III. <u>Testimony of Betty Leitch, George Lietch, and Bridgette Estrada</u>

During the bench trial, Leitch testified that she had lower back trouble throughout her pregnancy in 2001, but had no other problems with her back or neck from that time until the date of the accident. Leitch also testified that she had no prior pain or other trouble with her left elbow or her sinuses. Leitch testified that prior to the accident she was active in playing basketball, swimming, bowling, cleaning her church and her home and playing with her young daughter.

Leitch testified that, since the accident, she has suffered from pain in her neck and elbow and has undergone three very painful operations to correct problems with her elbow and the deviated septum. Leitch testified that she still has muscle spasms in her neck down to the middle of her back, and that she has difficulty sleeping. Lietch also testified that local injections, physical therapy, and OMT have provided only temporary pain relief with regard to her neck pain

6

and that she continues to experience pain in her left elbow. Additionally, Leitch testified that she has a scar on her head from the laceration that she suffered during the accident and scars on her elbow from the surgeries, however the scar on her head is covered by her hair.

Leitch testified that she has missed some time from her job as Registrar because of pain, however she has no lost wages because she is paid a monthly salary regardless of how many hours she works. Leitch was not employed at the time of the accident. Furthermore, Leitch is no longer able to play with her daughter or pick her up, carry laundry, vacuum at home, or participate in some sports activities.

Leitch testified that, following an incident at work in March 2007 where she stepped back off of a collapsing table, she told Dr. Essig-Beatty that her neck and back symptoms worsened, although she also stated that she had made an appointment for additional OMT with Dr. Essig-Beatty prior to that incident.

Leitch testified that none of her doctors have given her a disability rating at this time, although Dr. Pack does not give such ratings and Dr. Henderson was not asked to do so. With regard to Dr. Hooper, Leitch testified that she had filed a complaint against him because he failed to give her a permanent disability rating in the face of her complaints of ongoing pain. Leitch testified that, as between her elbow and neck pain, the neck, and associated upper back, pain is the more severe at the present time.

George Leitch testified that his wife used to be very active, but that her activities have become very limited since the accident. Mr. Leitch testified further that his wife had no significant health problems prior to the accident, but that now she experiences severe pain in her elbow with repetitive activity and is a very restless sleeper. Mr. Leitch reported that his wife is

7

very self-conscious about the scars on her head and elbow. Additionally, Mr. Leitch testified that his wife experiences anxiety when traveling in vehicles, particularly at intersections.

Bridgette Estrada testified that she has worked under Leitch as an Assistant Registrar for the past year. Estrada testified that when she was hired Leitch informed her about the accident and that Estrada would be responsible for lifting any heavy equipment. Estrada testified that Leitch is unable to pick up her daughter and that she periodically appears to be in pain at work. With regard to the incident in which Leitch stepped or fell off a table at work, Estrada testified that she observed the legs of the small coffee table buckle and Leitch step backwards off the table. Estrada further testified that when she asked Leitch if she was alright, Leitch simply giggled and did not speak further of the incident. Estrada testified that she did not have the impression that Leitch had been hurt because of the incident.

### IV. Testimony of Leitch's Treating Physicians

#### A. Dr. Patricia Henderson

Leitch submitted Dr. Henderson's August 9, 2007 deposition as an exhibit. Dr. Henderson is a doctor of osteopathy who practices family medicine at Alleghany Regional Hospital.

During her deposition, Dr. Henderson testified that Leitch was a patient of hers both before and after the motor vehicle accident on June 7, 2004. Dr. Henderson summarized her post-accident examination notes and discussed the treatment that Leitch has received from her and other doctors. Dr. Henderson testified that Leitch has been an excellent patient and that she has not shown any signs of malingering. Dr. Henderson stated that she has reviewed all of Leitch's medical records since the accident, and that Leitch's complaints have been consistent.

8

Based on her examinations of Leitch and Leitch's medical records, Dr. Henderson opined that Leitch has several injuries that are related to the accident, and that those injuries are as follows: (1) cervical strain and sprain type injury; (2) a herniated cervical disc, which resulted in spinal and neural foraminal stenosis; (3) a thoracic strain with a herniated thoracic disc and thoracic spinal stenosis secondary to the disc; (4) injury to her left elbow; and (5) a deviated septum which was surgically repaired. Dr. Henderson also testified that Leitch's elbow, back and neck injuries are permanent and that she will require medical treatment in the future. Specifically, Dr. Henderson testified that Leitch will require visits to Dr. Henderson; periodic testing, including MRI scans and x-rays; physical therapy; OMT with Dr. Essig-Beatty; and medication for pain.

With regard to Leitch's step, or fall, off the table at work, Dr. Henderson testified that Leitch's pain stemming from that incident was an exacerbation of her previous injury due to the motor vehicle accident, not a new injury. Specifically, Dr. Henderson testified that all of Leitch's cervical and back pain was related to the same injury and that there would have been no pain from the table fall if there had been no motor vehicle accident. With regard to Leitch's elbow, Dr. Henderson testified that the surgery performed by Dr. Hooper was helpful and relieved some of Leitch's pain, but that it was not a complete cure.

Dr. Henderson testified that Leitch's average annual expenses for medications would total $350.00, that Leitch's average annual expenses for visits to Dr. Henderson's office would total $222.00, that Leitch's average annual expenses for OMT treatment with Dr. Essig-Beatty would total $480.00, that Leitch's average annual expenses for physical therapy would total $1,200.00, and that Leitch would need an x-ray every other year at a cost of $100.00 and an MRI scan every

9

five years at an unspecified cost.

   B.   Dr. Joe M. Pack

Leitch submitted Dr. Pack's August 8, 2007 deposition as an exhibit. Dr. Pack is an orthopaedic surgeon who practices at Jackson River Orthopedics and the West Virginia Healthcare Alliance in Low Moor, Virginia. In preparation for his deposition, Dr. Pack testified that he reviewed his own medical records regarding Leitch as well as all of her other medical records, photos of the injury and the incident reports regarding the accident.

Dr. Pack testified that he initially saw Leitch on June 11, 2004 for posterior elbow pain over the laceration to her left elbow. Dr. Pack testified that on that visit as well as at later visits, Leitch experienced pain and residual stiffness in her elbow and that he referred Leitch to physical therapy. When Leitch returned to Dr. Pack on November 8, 2004, he testified that she had more pain and signs of lateral epicondylitis, which is commonly known as tennis elbow. At that point, Dr. Pack testified that he treated Leitch with a series of injections to her left elbow which included a steroid derivative to reduce inflammation. Dr. Pack also testified that Leitch's pain returned after the injections and became severe, or chronic.

Dr. Pack testified that the MRI scan of February 26, 2006 showed features consistent with chronic lateral epicondylitis and a partial tear thickening of the extensor carpi radialis and brevis tendon. Dr. Pack testified that on March 3, 2006, he performed a left elbow, lateral release with debridement of extensor carpi radialis brevis and removal of some underlying bone. Dr. Pack also testified that during the surgery he noted that the tendon had been completely torn from the bone, a finding which is not typical in a case of chronic lateral epicondylitis which develops from overuse.

10

Dr. Pack then testified that he released Leitch to her usual activities on May 24, 2006 after she reported improvement in her symptoms. With regard to the gallon of milk, Dr. Pack testified that Leitch reported pain and discomfort in her elbow after lifting the milk but that this was an exacerbation of her underlying injury.

Dr. Pack testified that Leitch's elbow is not normal and that her elbow dysfunction will be a chronic, life-long condition. Dr. Pack noted that his own findings were consistent with the FCE which showed some weakness in Leitch's left upper extremity. Dr. Pack further testified that Leitch will likely experience future swelling, pain, and inflammation, therefore she would need to obtain future medical treatment for her left elbow at a cost of $500.00 to $1,000.00 per year. Dr. Pack testified that he did not do a disability rating for Leitch but that she will have some pain and permanent disability in the future. Dr. Pack did testify, however, that he agreed with Dr. Hooper's report of May 9, 2007 following Leitch's second surgery in which Dr. Hooper stated that Leitch had reached maximum medical improvement.

    C.    <u>Dr. William Hooper</u>

The government submitted Dr. Hooper's May 17, 2007 deposition as an exhibit. Dr. Hooper is an orthopaedic surgeon with an additional qualification in surgery of the hand and upper extremity.

Dr. Hooper testified that the accident was the cause of Leitch's lateral epicondylitis. Dr. Hooper also testified that after Dr. Pack's surgery, Leitch reached a plateau and her pain recurred when she picked up a gallon of milk. Dr. Hooper further testified that picking up the milk aggravated her previous problem and caused recurrent lateral epicondylitis.

Dr. Hooper testified that, after his initial consultation with Leitch on December 11, 2006,

11

he had x-rays taken of her elbow which showed spurring around the elbow bone probably caused by tendinitis to the bone. Dr. Hooper testified that during his surgery to lengthen the tendon and reattach it to the bone, he found some residual debris in Leitch's elbow.

Dr. Hooper testified that when he saw Leitch in a follow-up visit on May 9, 2007, she reported very little pain. He then testified that she would be able to work as a Registrar or house cleaner without any problem. Dr. Hooper also testified that Leitch would need no further services from him with regard to her injuries.

Dr. Hooper testified that, although he did not treat Leitch for any spinal or cervical injury, he did review the MRI scans taken of her neck, thoracic spine, and lower back. Dr. Hooper further testified that it was unlikely that Leitch's degenerative disc disease was caused by the accident, although he admitted that it was possible the accident aggravated her underlying chronic condition.

V.  Testimony of Dr. Robert Widmeyer

Dr. Robert Widmeyer testified as a medical expert for the government. Dr. Widmeyer is an orthopaedic surgeon in Roanoke, who has retired from active practice.

Based on his review of Leitch's medical records,* Dr. Widmeyer testified that the laceration to her left elbow involved only the skin and soft tissue. Dr. Widmeyer testified that the pain Leitch experienced in her elbow was caused by the inflammation of the tendon, and that overuse is the typical cause of such an injury. Therefore, Dr. Widmeyer testified that he did not believe the accident caused any problems with Leitch's elbow other than the original lacerations.

Dr. Widmeyer stated that when Leitch picked up the milk jug, it pulled the tendon loose

---

*Dr. Widmeyer did not examine Leitch or communicate with her treating physicians.

12

again after the surgery performed by Dr. Pack. Dr. Widmeyer testified that the milk jug incident created a new injury because Leitch had reported to Dr. Pack, prior to that incident, that she was doing well after the first surgery. Dr. Widmeyer also testified that Leitch has no permanent disability related to the elbow, pointing to Dr. Hooper's report that she was at maximum medical improvement and that she had a full range of motion in the arm, and that she should need no further treatment of the elbow in the absence of a new injury. Dr. Widmeyer testified that he disagrees with the limitations placed upon Leitch in the Functional Capacity Evaluation because Dr. Hooper's examination showed no such limitations.

With regard to Leitch's cervical pain, Dr. Widmeyer testified that she had average degenerative disc disease in her back and neck as evidenced by her reports of lower back pain during her pregnancy in 2001 and the various MRI scans and x-rays performed. Dr. Widmeyer admitted that the accident caused her to experience a flare up of pain from the degenerative disc disease, however he testified that such a flare up will typically settle down within approximately four months, even with no treatment. Dr. Widmeyer noted that Leitch was not reporting as much neck pain at the time her elbow became more of a problem. Dr. Widmeyer further testified that the incident in which Leitch stepped back off a table at work caused a new flare up of her underlying degenerative disc disease, and as such was a new event unrelated to the accident. With regard to the OMT treatment provided by Dr. Essig-Beatty, Dr. Widmeyer testified that it is not recommended in the case of degenerative disc disease because it can damage the spine and cause pain to continue until such treatment is stopped. Dr. Widmeyer also testified that any future medical treatment for Leitch's neck pain would be unrelated to the accident.

13

Case 7:06-cv-00278-GEC   Document 34   Filed 09/11/07   Page 13 of 20   Pageid#: 100

VI. <u>Stipulations</u>

The parties concede that Leitch has property damage relating to her vehicle, which was totaled in the accident, in the amount of $8,000.00. The parties stipulated that the medical care and treatment related to the repair of Leitch's deviated septum was directly related to the accident. The government conceded that the medical expenses related to the treatment of Leitch's elbow injury were the result of the accident up to the time Leitch picked up the gallon of milk and began experiencing additional pain. The government also conceded that the accident caused Leitch's cervical spine symptoms from the date of the accident until October 31, 2004, a date approximately four months after the accident. The parties dispute that Leitch's remaining medical expenses related to her elbow and her neck and back pain are related to the accident.

## Summary of the Applicable Law

Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Consequently, damages generally are determined pursuant to the law of the state where the negligent act or omission occurred, in this case Virginia. <u>Roark v. United States</u>, 456 F. Supp. 2d 739, 742 (W.D. Va. 2006).

In determining the damages to which a plaintiff is entitled, Virginia law requires the trier of fact to consider: (1) any bodily injuries the plaintiff sustained and their effect on her health according to their degree and probable duration; (2) any physical pain and mental anguish the plaintiff suffered in the past and any that she may be reasonably expected to suffer in the future; (3) any disfigurement or deformity and any associated humiliation or embarrassment: (4) any inconvenience caused in the past and any that probably will be caused in the future; (5) any

14

medical expenses incurred in the past and any that may be reasonably expected to occur in the future; (6) any earnings the plaintiff lost because she was unable to work at her calling; (7) any loss of earnings and lessening of earning capacity, or either, that she may be reasonably expected to sustain in the future; and (8) any property damage she sustained. See Virginia Model Jury Instructions - Civil, Instr. No. 9.000 (2007).

The plaintiff bears the burden of proving "with reasonable certainty or by a preponderance of the evidence that the injuries for which she claims damages were properly attributable to the accident." Diggs v. Lail, 201 Va. 871, 114 S.E.2d 743, 747 (Va. 1960). While there is no requirement that the plaintiff prove the exact amount of damages with absolute certainty, a plaintiff "must prove with reasonable certainty the amount of damages and the cause from which they resulted." Medcom, Inc. v. C. Arthur Weaver Co., 232 Va. 80, 348 S.E.2d 243, 248 (Va. 1986).

A defendant who causes injuries to a plaintiff with a preexisting condition must take the plaintiff as he finds her. Bradner v. Mitchell, 234 Va. 483, 362 S.E.2d 718, 722 (Va. 1987). "Although not responsible for the preexisting condition itself, he is liable for any exacerbation of it caused by his tortious conduct." Id. Furthermore, "[i]n order for a cause to be a proximate cause, there must be a causal connection by natural and unbroken sequence between the negligence complained of and the injury suffered; there must not exist any intervening efficient cause or causes." Koutsounadis v. England, 238 Va. 128, 131 (1989).

### Findings of Fact and Conclusions of Law

Having considered the aforementioned evidence, the court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure:

15

1. The court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1346(b)(1).

2. On June 7, 2004, Leitch was injured in a motor vehicle accident in Botetourt County. The government has admitted that the accident resulted from the negligence of a Postal Service employee. The accident occurred when the employee failed to stop his vehicle in the cross-over at the intersection of Route 681 and Route 220, and drove into the side of the pick-up truck driven by Leitch. The impact of the collision caused Leitch to hit her head on the windshield of the vehicle and caused her body to be violently jarred. Additionally, the truck's driver's side door struck Leitch in the left elbow.

3. On the date of the accident, Creech was 39 years old. Creech is now 42 years old. She has a life expectancy of 38.7 years. See Va. Code § 8.01-419.

4. Based on all of the evidence presented at trial, including the depositions and opinions of Leitch's treating physicians, the court finds that Leitch suffered compensable injuries as a result of the accident. Although Dr. Widmeyer, the defendant's expert, testified that Leitch's elbow injury and her cervical spine impairments after October 31, 2004 were not caused by the accident, the court finds that Dr. Widmeyer's testimony on the issue of causation is not fully credible. Dr. Widmeyer's testimony with regard to Leitch's elbow injury, which was based solely on his review of Leitch's post-accident medical records, was entirely inconsistent with the opinions of Leitch's treating physicians. Furthermore, the government has conceded responsibility for the damages associated with Leitch's elbow injury, at least up until the milk incident. With regard to the duration of Leitch's cervical and spinal injuries, Dr. Widmeyer's testimony was inconsistent with the fact that Leitch has experienced pain in her neck and upper

back on a continuous, though variable, basis from the time of the accident to the present, as evidenced by Leitch's own testimony, her medical records, and the testimony of her treating physicians. The medical records and testimony confirm that Leitch began to complain of pain in her neck and back immediately after the accident, and that such symptoms have been permanent. While the medical evidence shows that Leitch may have suffered from pre-existing degenerative changes in her spine, the court finds that the symptoms associated with that condition were accentuated and accelerated by the accident.

5. The court also finds that the incident in which Leitch picked up a gallon of milk does not operate as a superseding cause of Leitch's injuries in this case. While it is true that an intervening cause may absolve a defendant of all or part of the liability for damages related to an injury, it may do so only when it so entirely supersedes "the operation of the defendant's negligence that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury." Koutsounadis v. England, 238 Va. 128, 132 (1989) (quoting Scott v. Simms, 188 Va. 808, 817 (1949)). Nor may an event become a superseding cause if it "was foreseen or reasonably might have been foreseen by the wrongdoer." Pastore v. Smith, 68 Va. Cir. 376 (2005) (quoting Scott, supra, 188 Va. at 817). Although Dr. Widmeyer testified that he believed a new injury resulted when Leitch picked up the gallon of milk, the court does not find this testimony entirely credible in light of the testimony of Leitch's treating physicians that it was simply an aggravation of the underlying injury. In addition, the court finds that it is reasonably foreseeable that Leitch would resume her regular activities following her surgery and that those activities, such as picking up groceries including milk bottles, might put a strain on the repaired elbow. See also, Roll "R" Way Rinks, Inc. v. Smith, 218 Va. 321, 331

17

(1977) (noting, in the face of defendant's claim that a plaintiff's return to his work as a football coach after a knee injury brought about by the defendant's negligence was an intervening cause, that "exercise was part of the prescribed therapy, and the symptoms plaintiff suffered when he attempted to do what he once did without difficulty only confirmed the factuality of his residual disability.")

      6.     Neither does the court find that Leitch's fall off the table at work was a superseding cause in this case. As stated more fully above, an event may become an intervening cause which breaks the causal connection between the defendant's negligence and a plaintiff's injuries only when it is not foreseen or reasonably foreseeable and if it alone, without any contribution from the defendant's negligence, produces the injuries. The court find that Dr. Widmeyer's testimony that the fall resulted in a new injury is not credible. Leitch's treating physicians testified that the fall or step off the table at work simply aggravated the existing neck and back injuries which had been caused by the accident. Leitch testified that she was still experiencing pain prior to the fall and had already arranged an appointment with Dr. Essig-Beatty. Although the incident may have exacerbated her symptoms for a period of time, the court finds that all of Leitch's neck and upper back pain were attributable to the accident.

      7.     The court finds that Leitch has experienced persistent pain since the accident and that the pain increases with activity or repetition. However, the court finds that Leitch's functional capacity is not severely limited. Leitch has essentially full range of motion in her elbow post surgery, and she maintains the capacity to perform light work. In fact, Leitch's primary limitation involves repetitive motion which is not required in her present job as Registrar. Nevertheless, Leitch was essentially asymptomatic before the accident, she has

18

Case 7:06-cv-00278-GEC    Document 34    Filed 09/11/07    Page 18 of 20    Pageid#: 105

suffered from continuous discomfort since the accident, her treating physicians have confirmed the existence of such discomfort, and they relate the discomfort to the accident. Therefore, the court finds that Leitch does have some degree of permanent impairment.

8. Based on the foregoing findings of fact, the court concludes that Leitch is entitled to recover the full measure of past economic damages, including past medical expenses, transportation expenses, and property damage. The court also finds that Leitch will incur expenses for future medical treatment. Finally, the court concludes that Leitch is entitled to recover damages for the permanent impairment of her left elbow and cervical spine, in addition to her pain and mental anguish, inconvenience, and scarring.

9. In making its determination of the proper amount of compensatory damages in this case, the court considered Leitch's relatively young age at the time of the accident as well as the fact that the proportion of her complaints due to the accident may diminish as she grows older. Leitch herself testified that the majority of her ongoing complaints relate to her cervical and back pain, and the court has assessed the proper damages in this case with the consideration that, as a younger individual, she may have a lengthy period of discomfort and loss of function. Furthermore, in considering the amount of medical expenses Leitch may reasonably be expected to incur in the future, the court finds that it must give credence to the recommendations of Leitch's treating physicians with regard to her need for future OMT sessions to alleviate her neck pain. The court also notes, however, that Leitch's treating physicians admitted that they could not recommend any future surgery for her left elbow, therefore the court finds by a preponderance of the evidence that Leitch's future need for x-rays and MRI scans of her elbow are not as great as she has claimed.

10. Considering all of the above, the court finds and concludes that Leitch is entitled to compensatory damages in the total amount of $327,396.09.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying judgment to all counsel of record.

ENTER: This 11th day of September, 2007.

*/s/ Glen E. Conrad*
United States District Judge